**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ALEXANDER MATTHEWS,

        Plaintiff,

    v.

JIE CHANG,

        Defendant.

No. 1:25-cv-06050-JPO

**DEFENDANT'S REPLY IN SUPPORT OF**
**MOTION TO DISMISS**

**INTRODUCTION**

Plaintiffs' "rebuttal" to Defendant's motion to dismiss (Dkt. No. 16, the "Opposition") once again demonstrates that the Complaint (Dkt. No. 1, the "Complaint") should be dismissed because it is rife with conclusions and short on necessary facts. Worse yet, Plaintiffs' Opposition makes assertions that are not only inconsistent with one another, but also inconsistent with the clear and unambiguous language of the Power of Attorney between the parties (Compl Ex. A; Opp'n Ex. C), all of which are used to prop up their ill-fated claims. Accordingly, for the reasons stated below, the Court should grant Defendant's Motion to Dismiss the Complaint with prejudice.

At bottom, Plaintiffs' Complaint compels its own dismissal. Plaintiffs own a copyrighted book titled the "Son of Qinghua" (the "Book"), which describes Shi Yongwei's ("Yongwei," or "Plaintiff") remorseless battle against the U.S. justice system. Plaintiffs entered into a partnership with Defendant in order to create a film adaptation of the Book. Plaintiffs granted a license (through the "Power of Attorney") to Defendant expressly to create the derivative film adaptation. However, due to an apparent sense of regret for granting the license to Defendant, Plaintiffs

1

unilaterally attempted to render the license a nullity *after the work was complete* and a day before filing the Complaint. That claim, and all claims in the Complaint, should be dismissed.

Additionally, Plaintiffs contend that Defendant created an unauthorized derivative work based on one of their purported protected works, yet both the Complaint and Opposition are ambiguous as to which work Plaintiffs are relying on. At some points, Plaintiffs suggest that Defendant's work derives from the Book, while elsewhere they reference a "derivative screenplay and film adaptation" titled *Once Upon a Time in New York*. Further, for the first time in their Opposition, Plaintiffs reference certain "voice recordings," which they allege are also a basis of Defendant's work. This lack of clarity makes it difficult to determine the scope and nature of the alleged infringement by Defendant. Critically, if Plaintiffs are claiming that Defendant's work is an unauthorized derivative work of the "screenplay" *Once Upon a Time in New York*, which is the subject of the attached U.S. Copyright Application, that argument fails because Plaintiffs do not hold a registered copyright in this work (described as the "Unregistered Screenplay" herein). Without a registered copyright, there can be no infringement.[1] *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 301 (2019). Thus, the entire Complaint should be dismissed for this reason alone.

However, regardless of which work Plaintiffs are relying on, Defendant had the requisite authority to create a derivative work based on the Power of Attorney between the parties. (Compl

---

[1] The Unregistered Screenplay is not eligible for preregistration under 37 C.F.R. § 202.16/17 U.S.C.A. § 408(f) because (1) Plaintiffs did not provide sufficient information (e.g., "subject matter, a summary or outline, the director, the primary actors, the principal location of filming, and any other information that would assist in identifying the particular work being preregistered") to reasonably identify or "describe the work" that is alleged to be infringed under 37 C.F.R. § 202.16(c)(6); and (2) under the Power of Attorney, Plaintiffs waived all rights related to [writing, revising, and editing the screenplay]," thus Plaintiffs had no right to create any screenplay and therefore cannot certify under 37 C.F.R. § 202.16(c)(8) that the work is being prepared for commercial distribution.

Ex. A; Opp'n, Ex. C.) In particular, Plaintiffs expressly granted to Defendant the power to "write, revise, and edit the screenplay in whole or part." (*Id.*) Defendant acted within the scope of the Power of Attorney and created an authorized derivative work ("Defendant's Screenplay" or "Screenplay"), and, thus, there is no copyright infringement.

Further adding to the list of inconsistencies within Plaintiff's Opposition brief, Plaintiffs simultaneously claim that the Power of Attorney was never granted and that the Power of Attorney was revoked on July 21, 2025. The former position is nothing more than a last-ditch effort by Plaintiffs to support their claim that Defendant did not have authority to create a derivative work. The latter claim only proves that valid authority existed *at the time the derivative work was created*. The fact that the revocation purportedly occurred on July 21, 2025 (one day before the filing of Plaintiffs' Complaint) means that the Power of Attorney was not revoked until *after* Defendant created the derivative work.

Accordingly, for the reasons stated below, the Court should grant Defendant's Motion to Dismiss the Complaint with prejudice.

**ARGUMENT**

**I.    *Defendant Did Not Waive the Defense of Insufficient Service***

Filing a motion to dismiss for insufficient service of process does not waive the defense under Rule 12(h) of the Federal Rules of Civil Procedure. In fact, it is the correct procedure to raise the defense and thereby preserve it. Defendant has asserted his right to proper service at the earliest possible stage—in his Motion to Dismiss—which preserves Defendant's defense and prevents the Court from acquiring jurisdiction over Defendant. This defense is only waived if the defendant fails to raise it in a timely manner, either through motion to dismiss or in an answer. FED. R. CIV. P. 12(h); *Love v. Riverhead Cent. Sch. Dist.*, 823 F. Supp. 2d 193, 197 (E.D.N.Y.

3

2011) ("A defense of insufficiency of process is waived if it is not promptly asserted by motion or in the responsive pleading.").

Plaintiffs contend that since "Defendant filed both a Motion to Dismiss and Memorandum of Law," he "thereby acknowledge[ed] service and waiv[ed] the objection." (Opp'n at 3.) Plaintiff misconstrues the procedural requirements set forth in the Federal Rules. Plaintiff is essentially treating Defendant's filing of his Motion to Dismiss as an acknowledgment of service, thereby waiving the objection. To put it plainly, Plaintiffs argue that since Defendant filed something, he acknowledged service; otherwise, he would not have filed anything. However, filing a motion to dismiss for insufficient service of process, if done in accordance with the appropriate procedural requirements, is the opposite of a waiver; it is the required procedural step a party must take to preserve the defense. Essentially, a defendant is making an appearance to contest jurisdiction, not submit to it. An acknowledgement and waiver of service occurs only if a defendant omits the defense from its motion or answer. FED. R. CIV. P. 12(h)(1).

Moreover, Plaintiff relies on *Grammenos v. Lemons* to support his contention that "[e]ven if service were defective, courts hold that actual notice and participation in litigation cure technical defects." (Opp'n at 3). But *Grammenos* does not provide Plaintiffs any safe harbor in the present case. In *Grammenos*, the Second Circuit held that while "[t]he standards set in Rule 4(d) for service on individuals and corporations are to be liberally construed, to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice… *there must be compliance with the terms of the rule*, and absent waiver, incomplete or improper service will lead the court to dismiss the action unless it appears that proper service may still be obtained." *Grammenos v. Lemos*, 457 F.2d 1067, 1070 (2d Cir. 1972). Applying a liberal construction, the Second Circuit still found that leaving "documents with an adult woman working for [defendant's]

4

sister at her apartment…" where defendant "himself did not reside" was not "under any construction of the phrase, his usual place of abode." *Id*. at 1071. Thus, "service was properly quashed." *Id*. The Federal Rules require that process be served by "any person who is at least 18 years old and *not a party*." FED. R. CIV. P. 4(c)(2) (emphasis added). Further, under N.Y. C.P.L.R. § 2103(a), "papers may be served by any person *not a party* of the age of eighteen years or over." N.Y. C.P.L.R. 2103 (2024) (emphasis added).

Here, Yongwei, *a party to this action*, purported to serve Defendant by taping a copy of the process to Defendant's door. (Dkt. No. 10). Accordingly, service was improper and in violation of Rule 4(c) and N.Y. C.P.L.R. § 2103(a).

## II. Defendant's Creation of the Screenplay Is an Authorized Derivative Work Which Defendant Separately Owns and Has Not Assigned

Notably, Plaintiffs' Opposition does not address Defendant's contention that the Power of Attorney granted an express license to Defendant to create the Screenplay or, at a minimum, an implied license to create the Screenplay. Instead, Plaintiffs reiterate the same two inconsistent statements that (1) the Power of Attorney was never valid, and (2) the Power of Attorney was revoked on July 21, 2025. Neither of these statements address the substance of Defendant's arguments supporting dismissal.

In his Motion to Dismiss, Defendant argues that an express, written license exists between Plaintiffs and Defendant. The Power of Attorney clearly shows Plaintiffs' intent to grant Defendant the right to create the Screenplay. Specifically, under the terms of the Power of Attorney, Plaintiffs granted to Defendant "all rights under the laws of the USA, including but not limited to, *writing, revising, and editing* the screenplay in whole or part." (Opp'n, Ex. C; Compl, Ex. A (emphasis added).) And importantly, Plaintiffs clearly *admit* this dispositive fact when they state that Defendant "was engaged to *write, direct, and edit* the adaptation." (Compl at 2; Opp'n Aff.

5

(emphasis added).) In addition, the Power of Attorney states that "[d]uring its term, [Plaintiffs] waive all rights related to Our Interests that have been authorized to Mr. Jie Chang and will not exercise these rights ourselves." (Opp'n, Ex. C; Compl, Ex. A.) Accordingly, Defendant was authorized to create the Screenplay through a valid license from Plaintiffs. *See Latour v. Columbia Univ.*, 12 F. Supp. 3d 658, 661 (S.D. N.Y. 2014) ("A license is a complete defense to a claim for copyright infringement."); *Ulloa v. Universal Music & Video Distribution Corp.*, 303 F. Supp. 2d 409, 416 (S.D. N.Y. 2004) ("A copyright owner who grants a license waives her right to sue the licensee for copyright infringement."); *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998). Pursuant to this license, Defendant created the Screenplay within the scope of the authorized use and, as a result of the lawful creation of the Screenplay, Defendant rightfully owns the derivative work he created. *Atticus Ltd. Liab. Co. v. Dramatic Publ'g Co.*, 145 F.4th 257, 263 (2d Cir. 2025) (citations omitted) ("Although a derivative work is based upon a copyrighted work, a derivative work is itself independently copyrightable" and the "aspects of a derivative work added by the derivative author *are that author's property*, but the element drawn from the pre-existing work remains on grant from the owner of the pre-existing work.") (emphasis added).[2]   And, the Copyright Act is express that "[a] derivative work prepared under authority of the grant before its termination may continue to be utilized under the terms of the grant after its termination." 17 U.S.C. §§ 304(c)(6)(A), 203(b)(1) (for modern grants). Accordingly, Defendant may continue exploiting his work under the license granted to him by the Plaintiffs even after the purported revocation on July 21, 2025. Thus, because any purported revocation by Plaintiffs on July 21, 2025

---

[2] Further, Defendant has not expressly transferred his ownership rights in the Screenplay to Plaintiffs pursuant to 17 U.S.C. § 204. The Power of Attorney does not contain any express assignment language and thus should not be misread as an assignment.

(notably, one day before filing the Complaint) did not occur until *after* Defendant created the Screenplay, the Screenplay remains authorized even if the Power of Attorney was revoked.

Plaintiffs attempt to circumvent the plain language of the Power of Attorney by arguing that Defendant was never a member of the company and thus he was not authorized to create the Derivative Work. That argument also fails. (Opp'n at 2, ("The Power of Attorney explicitly stated that it was only valid if Defendant became a member of Plaintiffs' film company, which never occurred"); *see also* Compl at 2.) Plaintiffs' contention that Defendant lacked the authority to create the Screenplay because the Power of Attorney was contingent upon Defendant being a member of the film company is plainly wrong. The right granted to Defendant to create the Screenplay is entirely separate from the rights granted to Defendant to become member of the film company. In reality, only the revocability of the Power of Attorney was contingent upon Defendant's status as a member. The Power of Attorney plainly states "[t]his Power of Attorney is irrevocable… as long as we are partners in the film company." (Opp'n, Ex. C.) Whether or not Defendant was a member (or "partner") of the film company had no bearing on his ability to "write, direct, and edit" the Screenplay. In other words, *even if* the Power of Attorney permitted revocation , there is no language to suggest that the permission *already given* could be retracted or thereafter rendered illusory. Plaintiffs' attempt to conflate the issues is without merit. Moreover, Plaintiffs' position is further undermined by other attached exhibits and statements, which clearly demonstrate that Plaintiffs consented to Defendant's creation of the Screenplay. (*See* Opp'n Aff. ("Defendant… was granted… a Power of Attorney to assist in writing, directing, and editing the adaptation… [W]e provided… [materials]… to the defendant to create a derivative work…."); Opp'n, Ex. C; Compl, Ex. A, (the Power of Attorney states "[d]uring its term, [Plaintiffs] waive all rights related to Our Interests that have been authorized to Mr. Jie Chang and will not exercise

7

these rights ourselves," effectively proving that Defendant, and Defendant alone, had the right to create the Screenplay.)).

The only evidence Plaintiffs point to in order to demonstrate that Defendant's authority to create the Screenplay was contingent upon him being a member is a purported letter of revocation, attached as Exhibit D, *sent one day before the filing of the Complaint*. The letter contains nothing more than the same conclusory statements that Plaintiffs make in their Complaint and Opposition. And, considering that the letter was sent *one day before the filing of the Complaint*, the letter also represents nothing more than a last-ditch effort to maintain a claim that Defendant did not have the requisite authority to create the Screenplay.

Even if the Court finds that the Power of Attorney is ineffective because Defendant never became a member of the company, an implied license was still created for several reasons. First, a reasonable person would have reasonably assumed that the *signed* Power of Attorney was immediately effective and granted the authority to create the Screenplay. If that were not the case, then the Power of Attorney would be an illusory contract subject to revocation at any time. Second, a reasonable person would have assumed Plaintiffs' actions indicated consent to create the Screenplay. In their Complaint and Opposition, Plaintiffs admit that Defendant "was engaged… to write, direct, and edit the adaptation." (Compl at 2). In addition, Plaintiffs provided Defendant certain materials to create the Screenplay. (Opp'n Affidavit, ("[W]e created a series of specific source material recordings and provided them to the defendant to use them to create… Once Upon a Time in New York.")).

Accordingly, Defendant's creation of the Screenplay was within the scope of the granted license and thus is a "complete defense" to Plaintiffs' claim for copyright infringement. *Latour v. Columbia Univ.*, 12 F. Supp. 3d 658, 661 (S.D.N.Y. 2014).

### III.   *The Opposition Does Not Cure the Deficiencies of the Remaining Counts (II-VII) and Thus the Remaining Counts Should Also Be Dismissed*

The Opposition does not cure the deficiencies of the remaining Counts in the Complaint. In addition, the remaining Counts should be dismissed for the same reasons as Count 1 as they rely on the same factual grounds as Count 1, for which no copyright infringement was established.

### CONCLUSION

For the reasons outlined in Defendant's Memorandum in Support of Its Motion to Dismiss and this Reply, Defendant respectfully requests the Court dismiss the entire Complaint with prejudice.

Dated: November 10, 2025
       New York, New York

Respectfully submitted,

VEDDER PRICE P.C.

By: */s/ Joshua A. Dunn*
       Joshua A. Dunn
       jdunn@vedderprice.com
       1633 Broadway, 31st Floor
       New York, New York 10019
       T:  +1 212 407 7700
       F:  +1 212 407 7799

       *Counsel for Defendants Jie Chang*

9

## WORD COUNT CERTIFICATION

I, Joshua A. Dunn, certify that according to the word count of the word-processing program used to prepare the foregoing memorandum of law, and exclusive of the portions of it that are excluded by Local Rule 7.1 and this Court's Individual Rule 4.C., there are 2,797 words in the memorandum of law.

/s/ Joshua A. Dunn
Joshua A. Dunn